OPINION
Defendant-appellant Timothy Lewis Jackson appeals from an order of the trial court designating him to be a sexual predator. Jackson contends that the evidence in the record is not sufficient to support a finding, by clear and convincing evidence, that he is a sexual predator. We conclude that the evidence in the record is sufficient. Accordingly, the judgment of the trial court is Affirmed.
 I
In 1996, Jackson pled guilty to a charge of Gross Sexual Imposition of a Victim Under the Age of Thirteen. The trial court imposed a sentence of from two to ten years.
In October 2000, while Jackson was still incarcerated pursuant to his sentence, Jackson appeared before the trial court at a sexual offender classification hearing. No testimony was presented at this hearing, but a number of exhibits were admitted, without objection. These included a House Bill 180 Screening Instrument, an Institution Summary Report, a pre-sentence investigation report, a psychological evaluation rendered by Dr. Susan Perry Dyer in connection with Jackson's sentencing in 1996, and a forensic evaluation by Dr. Bobbie G. Hopes rendered in 1998, apparently rendered in anticipation of a sexual offender classification hearing.
Following the admission of these exhibits, Jackson addressed the trial court personally on his behalf. The trial court found Jackson to be a sexual predator, but did not provide any explanation of its reasons for the finding. From the order finding him to be a sexual predator, Jackson appeals.
 II
Jackson's sole assignment of error is as follows:
 THE TRIAL COURT ERRED IN FINDING APPELLANT TO BE A SEXUAL PREDATOR BY CLEAR AND CONVINCING EVIDENCE.
Although, pursuant to State v. Eppinger (2001), 91 Ohio St.3d 158, a "model" sexual offender classification hearing would include a discussion by the trial court, on the record, of the particular evidence and factors upon which it relies in making its determination regarding the likelihood of recidivism, the failure of the trial court to provide any explanation for its finding is not reversible error. State v. Weaver (July 13, 2001), Montgomery App. No. 18532, unreported.
Jackson contends that the evidence in the record does not support a finding, by clear and convincing evidence, that he is sexual predator; that is, that he is likely to commit another sexually oriented offense in the future. R.C. 2950.01(E) and 2950.09(A)(3).
Jackson, who was forty years old at the time of the hearing, has committed three sexually oriented offenses as an adult. These include an Aggravated Sexual Battery in 1991 in Georgia, a Sexual Battery in 1992, and the Gross Sexual Imposition in this case. The record is not informative with respect to the 1991 Aggravated Sexual Battery. The record reflects that the 1992 Sexual Battery involved vaginal intercourse with a 9-year-old child. The offense in this case, committed in 1996, involved Jackson's rubbing the genital area of the ten-year-old child of the woman with whom he was then living, while the three of them were in bed together, ostensibly to sleep. According to the victim, this rubbing lasted for an hour.
Jackson has vacillated between admitting and denying the offense, and, consistently minimizes it. Jackson also indicates that the offense resulted, in large part, from his being under the influence of alcohol and cocaine. He acknowledges a history of alcohol and cocaine use, which he has been unable to overcome.
The record also reflects that Jackson minimizes the seriousness of his 1991 and 1992 offenses.
There is an indication in the record that Jackson acknowledged having committed, as a juvenile, an offense involving a twenty-three-year-old woman. However, since this offense is entirely self-reported, and since Jackson, the sole source of information concerning this offense, indicates that it merely involved "hugging" the woman, we attach no significance to it.
Several observations appearing in Dr. Dyer's 1996 evaluation are worth setting forth in full:
RESULTS OF PSYCHOLOGICAL TESTING
 Mr. Jackson was administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2) and the Multiphasic Sex Inventory (MSI).
Results of the MMPI-2 indicate that Mr. Jackson produced a highly questionable profile. He was extremely defensive in his responses and although his profile does not yield much valid information about his functioning, it does appear that even with his defense mechanisms, Mr. Jackson is a [sic] angry and rebellious individual who lacks identification with recognized conventions. Such individuals may have an inability to see themselves from others' perspective and demonstrate a reckless disregard of the consequence of their action. Unpredictability and poor social judgement are features of their behavior.
Responses to the MSI reveal that Mr. Jackson was once again highly defensive and on this instrument, refused to answer questions revealing sexual contact with children at all. For this reason, this instrument cannot be interpreted to reveal information about his sexual functioning.
DISCUSSION
Results of the current evaluation reveal that Timothy Lewis Jackson is a 40-year-old male who has multiple prior sexual offenses against both children and adults.[1] Mr. Jackson himself denied the sexual nature of these crimes although he implies that he needs treatment for the allegations. To his credit he seemed extremely interested in treatment although to his discredit he was also so defensive on psychological testing that little information could be gleaned. History reveals that Mr. Jackson reports multiple abuses as a child including some type of sexual abuse and father's alcoholism. He is well-educated, having some college to his credit and has been affiliated with military for over 20 years. He is currently a National Guardsman. Employment has included working as a bus driver, laborer and security guard (with weapon). Psychiatric history is negative although substance abuse history is positive for crack/cocaine. Mr. Jackson admits that he has used drugs and alcohol heavily and is/was addicted to crack/cocaine.
Clinical interview and testing reveal that Mr. Jackson can be an engaging individual who is articulate. He shows little remorse for his crimes however and does not openly admit responsibility.
RECOMMENDATIONS
Given the results of the current evaluation, it is this Psychologist's opinion that Mr. Jackson would be a difficult individual to monitor and treat while in the community. Because of his prior offending history, he poses a significant risk to the community and seems [to] offend indiscriminately among children and adults. His crack/cocaine addiction is also a concern and would render him even more unstable in the community.
(Underscoring in original; otherwise, emphasis is added.)
The following excerpts from Dr. Hopes's 1998 forensic evaluation parallel those contained in Dr. Dyer's earlier evaluation, and are worth setting forth herein:
PSYCHOLOGICAL TESTING RESULTS
 Mr. Jackson was administered the Minnesota Multiphasic Personality Inventory-2 (MMPI-2). His test results showed signs of defensiveness and an attempt to make a good impression, but the test results were considered valid. Persons with this profile typically are seen as hedonistic, self-centered, and egocentric. They show little social anxiety and no signs of acute psychic distress, except the type which is reactive, situational, and brief. They show marked disregard for social standards and values and demonstrate antisocial behavior, poorly developed consciences, easy morals, fluctuating ethical values, and a wide array of delinquent acts. They are very manipulative, and often are habitual liars, even when there is no clear reason to lie. Persons with this profile are characterized by the rationalization of almost anything and by adventurousness and risk-taking. They also tend to be seen as self-centered and self-indulgent. Persons with this profile may have problems with temper outbursts, and there is a high frequency of alcoholism and chemical dependency with this profile code.
 Persons with similar test results appear superficially charming and friendly, and they temporarily create a favorable impression because they are socially facile and are free from anxiety, worry, and guilt. However, they have no real loyalty to others and are undependable and unreliable. They tend to be overactive and impulsive, irresponsible and untrustworthy, shallow and superficial in their relationships. They are narcissistic, selfish, self-indulgent and impulsive with poor delay of gratification of impulses. They show poor judgment and act without considering the consequences of their acts. They fail to learn from experience and do not accept responsibility for their own behaviors. Persons with this profile are characterized by strong needs for immediate gratifications. There is a sense of their staying in the stance of adolescent rebellion all their lives. There is a strong tendency for sexual acting-out as well as a high level of sexual activity. These patients are prone to family and marital conflicts.
 Arousal-seeking and an inordinate need for excitement and stimulation characterize this group as a whole. They are ambitious, energetic, restless, overactive, and seek out emotional stimulation and excitement. They are uninhibited, and extraverted. Serious and long-term criminal behavior is not uncommon among this profile type. They may even have been in prison. These individuals show no sense of genuine guilt or remorse.
 They often have periods of very good school achievement, especially in earlier grades. Over all, these clients' unstable self-discipline and their tendency to get into conflicts with authority figures may bring about an eventual deterioration in their school performance. There tends to be a poor prognosis for this person to stay out of trouble, and there is a high frequency of acting-out. If there is a legal question involved in terms of the psychotherapy, then the client is likely to be very manipulative of the therapist. This is especially true if the client is referred by the courts. This profile probably has the poorest prognosis for effectiveness of traditional psychotherapy of any profile type. These clients do not stay in therapy nor do they change with traditional forms of psychotherapy. They are very likely to terminate against the therapist's advice.
 There is a need to evaluate the history of this client carefully in terms of any kind of repetition of interpersonal difficulties. The use of an informant whenever possible is indicated due to the high probability of this patient omitting facts, if not actually lying. Successful interventions seem to be specifically situational. Basic personality change does not seem to be very probable or possible in terms of the therapies currently available. If these individuals get involved in psychotherapy, they may appear to be "good patients," talkative and interested in "help." However, if expected to do anything but talk about themselves (e.g., asked to do therapy assignments or to begin to make behavioral changes), they loose [sic] interest in treatment. The modal diagnosis for this profile type is that of Antisocial Personality Disorder.
* * *
Recidivism Prediction and Psychological Research
* * *
Of concern for increased recidivism are the following factors, which are observed in Mr. Jackson:
 1. One prior conviction for a sexually-oriented offense, which is one of the better predictors of recidivism;
 2. An inconsistent employment history, which appears to have a moderate relationship with recidivism; and
 3. The number and chronicity of offenses, which suggests the strength of interest in the deviant sexual activity, which in this case involved a conviction in 1992, a prison term, then another sex offense conviction in 1996.
Summary
Although there is a large body of research which shows that certain factors are predictive of future sexual recidivism, there is no definitive research to guide the examiner in how to combine multiple predictive factors in order to make a final determination with specificity. However, in consideration of the above risk factors (particularly his two sex offense convictions, his continued minimization of the second offense, and his denial of the first offense), it is my opinion that Mr. Jackson's risk for committing future sexually oriented offenses is greater than the "average" or typical child molester. However, research suggests that successful participation in a specialized sex offender treatment program may reduce an offenders [sic] likelihood of re-offending. Therefore, it is strongly recommended that he be referred to a specialized sex offender treatment program within the prison system. If placed on parole, he should be referred to an intensive, specialized outpatient sex offender treatment program and his access to potential victims should be restricted. (Emphasis added.)
In our view, this evidence, which was admitted without objection, is sufficient to permit the trial court to find, by clear and convincing evidence, that Jackson is likely to commit another sexually oriented offense in the future. There is nothing in the record to suggest that Jackson has yet come to terms with his alcohol and cocaine abuse, which, by his admission, was a significant factor in his having committed the 1996 offense. He committed sexual offenses with minors in 1991 and 1992. Although there is an indication in the Institution Summary Report that he completed the "Jump Start" program in December, 1997, there is nothing in the record to inform us of the nature of this program, or the likelihood that his completion of it would significantly impact his future behavior. Both psychological evaluations suggest that Jackson has a personality that is not likely to respond well to therapy. The evaluations portray an individual who denies, or at least minimizes, his prior offenses, shows no remorse for those offenses, and seems to have no awareness that he has a pattern of deviant behavior that needs to be corrected.
In his brief, Jackson argues that Dr. Hopes, in her 1998 evaluation, suggested that the recidivism rate for sex offenders who offend against children or family members, or with whom they have a parental role, is generally reported to be approximately 10%, and that her conclusion that Jackson's risk for committing future sexually oriented offenses is greater than the "average" or typical child molester is, therefore, not sufficient to establish, by clear and convincing evidence, that he is likely to reoffend. We are not persuaded by this argument. To begin with, there is nothing in the record to reflect that Jackson's 1991 and 1992 offenses involved children "who are family members or with whom [Jackson has] a parental role." Admittedly, the victim in the 1996 offense would seem to fit within that description. Furthermore, Dr. Hopes acknowledged that because many sexually oriented offenses are not reported, the actual offense rate is likely to be much higher than the reported rate. Finally, Dr. Hopes opined that Jackson's risk for committing future sexually oriented offenses "is greater" than the "average" or typical child molester. Dr. Hopes did not quantify the extent to which Jackson's risk is greater than that of the average or typical child molester. For these reasons, we conclude that Dr. Hopes's evaluation does not support Jackson's argument that he is not likely to commit a sexually oriented offense in the future.
Based upon our review of all of the evidence in the record, we conclude that that evidence supports the trial court's finding that Jackson is a sexual predator. Accordingly, Jackson's sole assignment of error is overruled.
 III
Jackson's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
GRADY and YOUNG, JJ., concur.
[1] The reference to sexual offenses against "adults," would appear to be the self-reported incident involving "hugging" of a twenty-three-year-old female. As noted, we attach no significance to this incident, since the only source of information concerning it appears to be Jackson, himself, and his report of it is benign.